**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**

HELENE RAHAL,

Plaintiff,

vs.

MUSSEL BEACH RESTAURANT INC.,
MARK MEZZANCELLO,
PATRICIA MEZZANCELLO,
DCB321, LLC

Defendants.
___________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, HELENE RAHAL, by and through her undersigned attorneys and files this Complaint against Defendants, MUSSEL BEACH RESTAURANT INC., DCB321, LLC, MARK MEZZANCELLO and PATRICIA MEZZANCELLO (collectively referred to as "Defendants"), and state:

## PARTIES

1. Plaintiff, HELENE RAHAL (hereinafter "Rahal" or "Plaintiff") is and continues to be *sui juris*, over the age of 18, and a citizen of the State of New York.

2. At all times material hereto, MUSSEL BEACH RESTAURANT INC., (hereinafter "MBR") is a citizen of the State of Florida, conducting business in Palm Beach County, Florida.

3. At all times material hereto, MARK MEZZANCELLO (hereinafter "M. Mezzancello") was and continues to be *sui juris*, over the age of 18, and a citizen of the State of Florida.

4. At all times material hereto, PATRICIA MEZZANCELLO (hereinafter "P. Mezzancello") was and continues to be *sui juris*, over the age of 18, and a citizen of the State of Florida.

5. At all times material hereto, DCB321, LLC., (hereinafter "DCB") is a citizen of the State of Florida, conducting business in Palm Beach County, Florida.

**JURISDICTION**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity between the Plaintiff and the Defendants, and the matter in controversy exceeds $75,000.00, exclusive of interest, attorney's fees and costs.

**VENUE**

7. The Defendants, MBR, DCB, M. Mezzancello and P. Mezzancello engage in substantial and not isolated business activity in Palm Beach County, Florida. Specifically, MBR operates a restaurant on Atlantic Avenue in Delray Beach, Florida. M. Mezzancello and P. Mezzancello (hereinafter the "Mezzancello Defendants") are officers of MBR, and are involved in the day to day operation of MBR. Defendant, DCB is a limited liability corporation operated in Palm Beach County by P. Mezzancello.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

**GENERAL ALLEGATIONS**

9. In or about March 2013, David McCorison (hereinafter "McCorison") was contacted to assist the Mezzancello Defendants in the investment of certain assets. Following a meeting in New York, McCorison was retained to manage certain investments of the Mezzancello Defendants.

10. Sometime after the meeting with McCorison, DCB, a limited liability company managed by P. Mezzancello was opened. DCB's purpose was to receive capital and to fund certain investments for the Mezzancello Defendants. Within weeks after creating DCB, approximately $1,800,000.00 was deposited into DCB's bank account.

11. In August of 2013, the Mezzancello Defendants decided to purchase a 75% interest in a restaurant owned by Joseph Bilotti ("Bilotti") in Delray Beach, Florida. The appeal of Bilotti's restaurant was its prime location i.e., the northeast corner of East Atlantic Avenue and North Federal Highway. The Mezzancello Defendants purchased the 75% interest in Bilotti's restaurant for $620,000.00.

12. After acquiring the majority interest in Bilotti's restaurant, MBR was created and a build-out was prepared for a new seafood restaurant known as Mussel Beach. In December of 2013, Mussel Beach was opened for business.

13. It took a few months for the business relationship between the Mezzancello Defendants and Bilotti to cripple. In August of 2014, P. Mezzancello informed McCorison of their intent to buy Bilotti's 25% ownership out of MBR for $260,000.00.

14. A few months later, on or about the start of September 2014, the Mezzancello Defendants started the quest to find a new investor for MBR. The Mezzancello Defendants contacted McCorison to inquire as to whether McCorison could find a new partner for MBR and possible future ventures. McCorison informed the Mezzancello Defendants that he did not have that kind of cash but would make some calls to determine if anyone he knew was interested.

15. Later, in September of 2014, Rahal and McCorison met with the Mezzancello Defendants at the Brazen Fox Restaurant in White Plains, New York. The Mezzancello Defendants represented verbally to Rahal that M. Mezzancello was a career restauranteur, having

extensive experience with prior ownership of several restaurants over the course of the last fifteen (15) years. M. Mezzancello represented that through his experience, M. Mezzancello knew how to avoid certain pitfalls of restaurant ownership, and knew how to make a restaurant profitable. The Mezzancello Defendants discussed with Rahal the possibilities of selling Rahal an interest in MBR, and represented that sales for MBR by the end of 2014 were going to be $1,400,000.00.

16. During the meeting at the Brazen Fox, M. Mezzancello represented that Rahal was to receive a yearly return of 20% to 30% on the proposed investment. These funds were to be paid from profits generated by MBR. In addition, the Mezzancello Defendants represented that distributions were also part of the compensation Rahal was to receive as the owner of MBR.

17. The Mezzancello Defendants represented that payments to Rahal were feasible, as they were not taking a salary in their involvement as the management of MBR. Further, it was represented to Rahal that she was to receive a complete return of her investment within three (3) years from the date she initially invested funds. Moreover, Rahal was also promised that she was to receive distributions from profits every year, generated by MBR consistent with her ownership interest in MBR.

18. It took several discussions for the Mezzancello Defendants to convince Rahal of the viability of investing in MBR. Importantly, during the period of time when the above mentioned discussions were taking place, the Mezzancello Defendants were utilizing certain financial services provided by McCorison. The services provided to the Mezzancello Defendants gave additional credence to the Mezzancello Defendants' representations of being extremely successful owning and managing restaurants, and MBR was one of those successful projects.

19. Once Rahal was convinced by M. Mezzancello to invest in MBR, Rahal made her intent clear to the Mezzancello Defendants that the funds were to be utilized to grow the business of MBR. Additionally, Rahal expressly stated that she expected to receive a return of the payment of the investment, and a percentage of profits per year, consistent with her ownership interest in MBR.

20. After reviewing the profit and loss statement, certain bank statements and the sales report for 2014, in December of 2014, Rahal agreed to a purchase price of $700,000.00 for 49% of the interest in MBR (hereinafter the "Investment").

21. Rahal made a total of three (3) payments directly into the account controlled by the Mezzancello Defendants in DCB. The first one of $350,000.00 was made in February 2015. On or prior to April of 2015, Rahal made a second payment of $210,000.00. In July of 2015, Rahal made the last payment of $140,000.00.

22. Although the revenues for MBR in 2015 were approximately $1,800,000.00, the Mezzancello Defendants failed to provide a single distribution or dividend to Rahal for the profits generated by MBR in 2015. Instead, the Mezzancello Defendants represented that all revenue generated by MBR in 2015, had to be reinvested, and thus, distributions or dividends were not to be paid that year.

23. Upon information and belief, in 2016, MBR was on track to generate $2,100,000.00. While a dividend payout of $100,000.00 was discussed for Rahal for the year 2016, the Mezzancello Defendants raised excuses to avoid paying the dividend and/or distribution to Rahal.

24. The Mezzancello Defendants failed to pay Rahal the dividends and/or distributions promised to Rahal as inducement to receive the $700,000.00 from Rahal.

25. During the course of business, MBR received thousands of dollars in cash from its patrons as payment for food and beverages. Without informing Rahal, the Mezzancello Defendants failed to deposit those amounts of cash in MBR's bank account.

26. It has become readily apparent that cash funds are being diverted and hidden from Rahal by the Mezzancello Defendants.

27. Unequivocally, the Mezzancello Defendants commingled funds of MBR as their own by utilizing MBR's bank account as if it was their checking account. By way of example, the Mezzancello Defendants utilized MBR's account to pay for: at least one car payment for the P. Mezzancello's daughter, travel expenses including airline tickets, and certain expenses of the Mezzancello Defendants' rental properties, including pest control services and charges at Home Depot and Lowes. The Mezzancello Defendants retained the benefit of the cash generated by MBR, while charging personal expenses completely unrelated to the business operated by MBR.

28. Sometime in May of 2016, the relationship between Rahal and the Mezzancello Defendants started to deteriorate. It became evident that the Mezzancello Defendants had no intention of ever paying Rahal any dividends. After learning through the website of the Florida Department of State, Division of Corporations that the Mezzancello Defendants removed Rahal as Director and Secretary of MBR, a request was made for the issuance of the Certificates of Stock demonstrating Rahal's ownership interest in MBR.

29. Notwithstanding the Investment, MBR issued a certificate of capital stock for 490 shares of common stock of a par value amount of $.001. Based on the Investment provided, the alleged value of each stock appears to have been severely undervalued by the Mezzancello Defendants.

**COUNT I- INSPECTION OF DOCUMENTS**
**PURSUANT TO BY FLA. STAT. § 607.1604.**

30. Plaintiff re-avers and incorporates paragraphs 1 through 29 as if fully set forth herein.

31. This is an action as a result of the violation of Florida Statute § 607.1602, seeking the entry of an Order requiring MUSSEL BEACH RESTAURANT INC. to provide Plaintiff access to corporate business records for inspection on an expedited basis, and requiring MUSSEL BEACH RESTAURANT INC. to pay for the costs related to copying of those records as required by Fla. Stat. § 607.1604.

32. On October 13, 2016, Rahal provided written demand to MBR, as required by Chapter 607, sections 1601 through 1604 of the Florida Statutes, requesting the inspection of several categories of corporate records in Defendant's possession. See Rahal's Request attached as **Exhibit "A."**

33. As delineated in the request attached as Exhibit "A", the inspection was requested to take place no less than fifteen (15) business days after the request was made, and was requested to take place during regular business hours at the Corporation's principal office. See Exhibit "A."

34. MBR was placed on notice of Rahal's good faith basis and proper purpose to request the inspection. See Exhibit "A." Specifically, Rahal notified MBR the request for inspection was made for the following reasons:

(a) ascertaining the value of Rahal's shares and equity in the Corporation;

(b) ascertaining whether M. Mezzancello was engaged in self-dealing;

(c) ascertaining whether M. Mezzancello breached the fiduciary duty owed to Rahal, as a minority shareholder;

(d) ascertaining whether M. Mezzancello, either directly or indirectly through the directors, used his control, as majority shareholder, for his own personal interest to the disadvantage of Rahal, the minority shareholder;

(e) ascertaining whether M. Mezzancello failed, at times, to deposit cash sales into the Corporation's account, pocketing those funds personally without regard for Rahal's interest in the company or the Internal Revenue Code;

(f) ascertaining whether M. Mezzancello and his spouse have used the Corporation's bank accounts as their own personal account, depriving Rahal of the dividends and distributions rightfully owed to her as a return on her investment in Mussel Beach;

(g) insuring that the affairs of the Corporation have been properly administered;

(h) insuring that Rahal's interests as a shareholder of the Corporation are being properly protected; and,

(i) insuring that management of the Corporation has not engaged in the dissipation or waste of corporate assets and have not committed a breach of fiduciary duty to the Corporation and/or to Rahal as a minority shareholder of the Corporation.

35. Importantly, MBR was placed on notice that Rahal was aware of possible waste, dissipation, and/or possible misappropriation of corporate assets, including, without limitation, the payment by MBR of certain personal expenses of the Mezzancello Defendants. Nonetheless, instead of complying with the inspection request made by Rahal, MBR is intentionally obstructing Rahal's ability to review corporate documents that would either confirm or deny the misconduct and misappropriation discussed above.

36. Intentionally, and after being provided with sufficient and adequate notice under Fla. Stat. §607.1602, MBR elected to respond to the request made by Rahal by alleging that it

was not in possession of its own books and records requested in Exhibit "A." Instead of authorizing the inspection of records that the MBR should have in its possession, custody and/or control, MBR did not allow Rahal to inspect and copy the records requested by Rahal as provided by Fla. Stat. §607.1602(2).

37. Despite complete compliance with Fla. Stat. §607.1602(3), MBR chose to hide accounting records of the corporation, records of shareholders and other books and records of the corporation detailed in Rahal's requests, in violation Fla. Stat. §607.1602

38. MBR's failure to allow Rahal to inspect and copy any other record of the Corporation requires the entry of an Order on an expedited basis, permitting the inspection and copying of the records demanded by Rahal. See Fla. Stat. §607.1604(2).

39. This Court has subject matter jurisdiction to enter the relief requested pursuant to Fla. Stat. § 607.1604. Further, venue is proper in this County, as the inspection requested was supposed to take place in MBR's principal place of business located in Palm Beach County, Florida.

40. Pursuant to Fla. Stat. §607.1604(3), Plaintiff requests the entry of an Order on an expedited basis, requiring the inspection and copying of the records demanded by Plaintiff, and requiring the Defendant to pay Plaintiff's costs, including reasonable attorney's fees, reasonably incurred to obtain the Order and enforce Plaintiff's rights.

41. Moreover, Plaintiff demands that the all records demanded for inspection be copied at Defendant's expense. See Fla. Stat. §607.1604(3).

WHEREFORE, Plaintiff, HELENE RAHAL demands, as provided by Chapter 607, Sections 1601 through 1604, all remedies provided under Florida for MUSSEL BEACH RESTAURANT INC's failure to comply with the statutory demand for inspection of documents

including, but not limited to, the entry of an Order requiring MUSSEL BEACH RESTAURANT INC. to provide copies of all documents requested for inspection by HELENE RAHAL, to award HELENE RAHAL reasonable attorneys' fees and costs incurred by HELENE RAHAL in compelling such inspection under Fla. Stat. §607.1604(3), to require MUSSEL BEACH RESTAURANT INC. to pay for all costs of copies of all documents demanded for inspection, and to dispose of this claim on an expedited basis, together with such other and further relief as the Court deems just and proper.

**COUNT II- ACCOUNTING AGAINST MUSSEL BEACH RESTAURANT INC.**

42. Plaintiff re-avers and incorporates the allegations referenced in paragraphs 1 through 29 of this complaint, as if fully set forth herein.

43. This is an action for accounting.

44. Rahal owns a 49% interest in MBR, which said percentage involves her ownership of all transactions conducted by MBR, including those that are complicated.

45. Rahal is requesting an accounting related to the following transactions since March 1, 2016 to the date in which the accounting takes place:

a. All the gross revenues generated by MBR on a monthly basis per transaction;

b. All the expenses incurred by MBR on a monthly basis per transaction;

c. All monthly expenses incurred by MBR, including expenses paid in compensation to each employee of MBR;

d. All monthly expenses incurred by MBR, including expenses paid in compensation to each director and officer of MBR;

e. All distributions made to shareholders of MBR;

f. All transactions involving monies borrowed by MBR from any source,

including any future receivable agreement executed by MBR;

g. All transactions involving payment of monies to vendors of MBR;

h. All miscellaneous debits and/or withdrawals from MBR's bank account(s);

i. All records involving receipt and deposit of cash paid to Mussel Beach by its patrons;

46. The transactions at issue, whereby Rahal has a 49% interest in said transactions, involve extensive or complicated accounts, and a remedy at law is simply inadequate.

WHEREFORE, Plaintiff, HELENE RAHAL, demands, the entry of an Order requiring MUSSEL BEACH RESTAURANT INC., to provide an accounting as requested herein by HELENE RAHAL, together with such other and further relief as the Court deems just and proper.

**COUNT III- JUDICIAL DISSOLUTION OF MBR**

47. Plaintiff re-avers and incorporates the allegations referenced in paragraphs 1 through 29 of this complaint, as if fully set forth herein.

48. This is an action for Judicial Dissolution of a Corporation pursuant to Fla. Stat. §607.1430(3).

49. At all times material hereto, at all times material hereto, Rahal is a shareholder of a corporation having 35 or fewer shareholders.

50. Upon information and belief, certain corporate assets of MBR have been misapplied or wasted by the Mezzancello Defendants, the directors and officers of MBR, causing material injury to MBR. For example, the Mezzancello Defendants failed to deposit cash collected by Mussel Beach into MBR's bank account, causing material injury to MBR. Additionally, it is apparent that the Mezzancello Defendants are commingling funds of MBR by

utilizing MBR's bank account as if it was their checking account. For instance, the Mezzancello Defendants utilized MBR's account to pay for: at least one car payment for the P. Mezzancello's daughter, travel expenses including airline tickets, and certain expenses of the Mezzancello Defendants' rental properties, including pest control service and charges at Home Depot and Lowes. Funds utilized to cover expenses unrelated to the business of MBR results in corporate waste, which results in a material injury to MBR.

51. Upon information and belief, the directors or those in control of MBR have acted, are acting, or are reasonably expected to act in a manner that is fraudulent. For instance, it is believed that while cash payments are collected at Mussel Beach, said cash is not deposited in full into MBR's account. Additionally, the Mezzancello Defendants continue to utilize the funds of MBR as if they were their own, without seeking the approval from Rahal, a 49% shareholder of MBR.

52. Pursuant to Fla. Stat. §§ 607.1430, Rahal established sufficient grounds for a judicial dissolution of MBR, and hereby requests the dissolution of same.

53. Additionally, as provided by Fla. Stat. §§ 607.1431(3), during the pendency of the dissolution, the law authorizes the court, and Rahal requests that the court issue injunctions, appoint a receiver or custodian pendente lite with all powers and duties the court directs, and take other action required to preserve the corporate assets wherever located, and carry on the business of the corporation until a full hearing can be held on the dissolution.

54. Rahal is entitled to the entry of a judgment dissolving the corporation and specifying the date of the dissolution as provided by Fla. Stat. § 607.1433, and to direct the winding up and liquidation of the corporation's business and affairs as required by law.

WHEREFORE, Plaintiff, HELENE RAHAL, demands, the entry of a Judgment of Dissolution requiring the winding up and liquidation of MUSSEL BEACH RESTAURANT INC., taxable costs, and all further relief as the Court deems just and proper.

**COUNT IV- BREACH OF FIDUCIARY DUTY AGAINST THE MEZZANCELLO DEFENDANTS**

55. Plaintiff re-avers and incorporates the allegations referenced in paragraphs 1 through 29 of this complaint, as if fully set forth herein.

56. Rahal shares a relationship with the Mezzancello Defendants, wherein Rahal is a shareholder of MBR, and the Mezzancello Defendants are directors and officers of MBR.

57. Rahal reposed trust and confidence in the Mezzancello Defendants by way of providing $700,000.00 to the Mezzancello Defendants in exchange for a 49% interest in MBR.

58. At all times material hereto, Rahal, as a shareholder, and an ousted director and officer of MBR expected to receive an accounting of all the monies received by MBR and all monies received by MBR and paid out by MBR.

59. Rahal, a minority shareholder, was the weaker party of the relationship, and in that position, Rahal reposed her trust and confidence in the Mezzancello Defendants, the officers and directors of MBR.

60. Rahal expected that funds of MBR would be properly accounted for and deposited by the Mezzancello Defendants. Rahal also expected to receive dividends and/or distributions around the same time the Mezzancello Defendants took their distributions and/or dividends. Further, Rahal expected that funds of MBR would solely be used for the business of MBR, and not to cover personal expenses of the Mezzancello Defendants.

61. As officers and directors of MBR, the Mezzancello Defendants undertook such trust deposited by Rahal, and assumed a duty to advise, counsel and/or protect Rahal in

connection with her interest in MBR.

62. The Mezzancello Defendants breached their duty to Rahal, by and among other things failing to account for cash collected at Mussel Beach and failing to deposit same in MBR's account(s); failing to advise Rahal of the monies collected in Mussel Beach and deposited in MBR's account(s); failing to inform Rahal of all the monies that are paid out of MBR's account(s); failing to pay distributions and/or dividends to Rahal; and failing to utilize MBR's account(s) and funds to pay solely expenses related to MBR.

63. Rahal suffered damages as a result of the multiple breaches of their fiduciary duty by the Mezzancello Defendants.

WHEREFORE, Plaintiff, HELENE RAHAL, demands, the entry of a judgment for damages well in excess of seventy-five thousand dollars against Defendants: MARK MEZZANCELLO and PATRICIA MEZZANCELLO, as well as prejudgment and post-judgment interest, taxable costs, and all further relief as the Court deems just and proper. Plaintiff demands a trial by jury on all issues so triable.

## COUNT V- UNJUST ENRICHMENT AGAINST THE MEZZANCELLO DEFENDANTS AND DCB

64. Plaintiff re-avers and incorporates the allegations referenced in paragraphs 1 through 29 of this complaint, as if fully set forth herein.

65. On or about February of 2015, Rahal conferred a benefit to the Mezzancello Defendants and DCB in the amount of $350,000.00. On or prior to April of 2015, Rahal made a second payment of $210,000.00 to the Mezzancello Defendants and DCB. In July of 2015, Rahal made the last payment of $140,000.00 to the Mezzancello Defendants and DCB.

66. The monies conferred by Rahal were intended to be an investment for the purchase of a 49% interest in MBR, the operator of Mussel Beach Restaurant.

67. At all times material hereto, the Mezzancello Defendants had knowledge of the funds provided by Rahal and voluntarily accepted and retained the benefit conferred in connection with the funds. The benefits include but are not limited to the funds received and accepted from Rahal, but also the monies generated by Mussel Beach Restaurant as a result of the capital that was provided by Rahal.

68. The circumstances render the Mezzancello Defendants' retention of the benefit inequitable unless the Mezzancello Defendants pay Rahal the value of the benefit.

WHEREFORE, Plaintiff, HELENE RAHAL, demands, the entry of a judgment for damages well in excess of seventy-five thousand dollars against Defendants: DCB321, LLC, MARK MEZZANCELLO, and PATRICIA MEZZANCELLO, as well as prejudgment and post-judgment interest, taxable costs, and all further relief as the Court deems just and proper. Plaintiff demands a trial by jury on all issues so triable.

## COUNT VI- BREACH OF ORAL CONTRACT AGAINST THE MEZZANCELLO DEFENDANTS

69. Plaintiff re-avers and incorporates the allegations referenced in paragraphs 1 through 29 of this complaint, as if fully set forth herein.

70. On or about November of 2014, the Mezzancello Defendants, offered to Rahal an interest as shareholder in MBR, payment of distributions of profits generated by MBR, and payment in full of the investment requested from Rahal within three years. Rahal accepted the offer made by the Mezzancello Defendants.

71. Rahal paid a total of $700,000.00 as the consideration required to obtain the above mentioned benefits.

72. While Rahal received a forty-nine (49%) percent interest in MBR, the Mezzancello Defendants breached the oral agreement by among other things, failing to pay in

full the investment made by Rahal and failing to pay distributions and/or dividends to Rahal based on profits generated by MBR in 2015, 2016, 2017 through the present time.

73. As a result of the breach of the oral agreement by the Mezzancello Defendants, Rahal sustained damages.

WHEREFORE, Plaintiff, HELENE RAHAL, demands, the entry of a judgment for damages well in excess of seventy-five thousand dollars against Defendants: MARK MEZZANCELLO, and PATRICIA MEZZANCELLO, as well as prejudgment and post-judgment interest, taxable costs, and all further relief as the Court deems just and proper. Plaintiff demands a trial by jury on all issues so triable.

**COUNT VII- NEGLIGENT MISREPRESENTATION**
**AGAINST THE MEZZANCELLO DEFENDANTS**

74. Plaintiff re-avers and incorporates the allegations referenced in paragraphs 1 through 29 of this complaint, as if fully set forth herein.

75. On or about September of 2014, the Mezzancello Defendants met with Rahal in New York and offered to Rahal an interest as shareholder in MBR.

76. The Mezzancello Defendants had a duty to correctly and accurately represent to Rahal information concerning the performance and payment of distributions and investments to potential investors of MBR.

77. The Mezzancello Defendants breached that duty by negligently misrepresenting to Rahal that she was to receive ongoing payments related to distributions and profits every year. Further, Mezzancello Defendants negligently misrepresented that within approximately three years, Rahal was to receive payment in full of the investment Rahal was making of $700,000.00.

78. As a direct and proximate cause of the negligent misrepresentations made by the Mezzancello Defendants, Rahal lost $700,000.00 in monies paid to the Mezzancello Defendants,

as well as the interest lost on the funds given to the Mezzancello Defendants.

WHEREFORE, Plaintiff, HELENE RAHAL, demands, the entry of a judgment for damages well in seventy-five thousand dollars against Defendants: MARK MEZZANCELLO, and PATRICIA MEZZANCELLO, as well as prejudgment and post-judgment interest, taxable costs, and all further relief as the Court deems just and proper. Plaintiff demands a trial by jury on all issues so triable.

Dated this 6th day of April, 2017.

Respectfully submitted,

PIKE & LUSTIG, LLP
2465 Mercer Ave, Suite 204
West Palm Beach, FL 33401
Telephone: 561-855-7585
Facsimile: 561-855-7710
pleadings@turnpikelaw.com
Attorneys for the Plaintiff

BY: /s/ Daniel Lustig
**DANIEL LUSTIG, ESQ.**
Florida Bar No.: 059225
**MICHAEL J. PIKE, ESQ.**
Florida Bar No.: 617296